586 A.2d 409

**Victor OSTROV, Appellant,**

**v.**

**I.F.T., INC., Appellee.**

Superior Court of Pennsylvania.

Argued March 28, 1990.

Filed Jan. 31, 1991.

Manuel A. Spigler, Philadelphia, for appellant.

Charles A. Harad, Philadelphia, for appellee.

Before WIEAND, BECK and POPOVICH, JJ.

BECK, Judge:

This is a dispute between a taxicab driver, appellant Victor Ostrov, and the administrator of the motor vehicle self-insurance plan in which Ostrov participated, appellee I.F.T., Inc. The issue is whether the trial court erred in dismissing a portion of Ostrov's complaint against I.F.T. on the ground that the court did not have subject matter

jurisdiction to decide issues involving the terms of the self-insurance plan because exclusive jurisdiction over such issues was vested in the Public Utility Commission (the "Commission"). We find that the trial court erred in dismissing a portion of Ostrov's complaint and we, therefore, reverse and remand.

The origins of this dispute lie in the motor vehicle insurance crisis experienced by motor carriers in the early 1980's. At that time, motor carriers, including taxicab operators, were increasingly unable to secure affordable motor vehicle insurance coverage. The problem was particularly acute in the Philadelphia area. As a result, in mid–1986, a number of Philadelphia area taxicab operators filed an application with the P.U.C. for joint authority to participate in a self-insurance program which would provide first party benefits, liability coverage and uninsured and underinsured motorist benefits. In *In Re Genco Services, Inc. t/a Cheldon Radio Cab*, 62 Pa.P.U.C. 362 (1986), the Commission granted this application and approved the applicants' proposed self-insurance plan.

In approving the self-insurance plan, the Commission acted under its authority to regulate insurance of motor carriers provided by section 512 of the Public Utility Code, which provides, in part:

> The Commission may, as to motor carriers, prescribe, by regulation or orders, such requirements as it may deem necessary for the protection of persons or property of their patrons and the public, including the filing of surety bonds, the carrying of insurance, or the qualifications and conditions under which such carriers may act as self-insurers with respect to such matters.

66 Pa.C.S.A. § 512 (1979); *In Re Genco, supra,* at 366.

One aspect of the plan as approved by the Commission was the designation of the program administrator, I.F.T., Inc., appellee herein. Under the plan, I.F.T.'s duties included general management of the self-insurance program, including loss settlement and claims payment. In addition, I.F.T. was charged with the responsibility of developing a

driver registration and training program. The necessity for such a program was regarded by the Commission as being of paramount importance, as the Commission observed that:

... an integral part of improving the quality of taxicab service in Philadelphia, and to assuring a long term solution to the present insurance crisis, is internal regulation of the drivers actually operating the taxicabs on the street. .... [this] proposal to self-regulate the drivers through its joint self-insurance program is a well developed and practical approach to this problem....

Furthermore, the Commission will lend support to IFT in its implementation of the proposed loss prevention program. If it is discovered that a participant has hired or leased a cab to a driver who is not recognized by the program as acceptable the Commission will take immediate action to rescind the party's self-insurer status and suspend its operating rights.

*Id.* at 380.

In implementing this approval of I.F.T.'s driver certification and loss prevention program, the Commission ordered:

IT IS FURTHER ORDERED: That unqualified drivers, as determined by IFT or this Commission, shall be prohibited from driving, leasing or taking possession of any taxicab operated by a participant certificate holder. Upon discovery that an unqualified driver has been utilized, the Commission shall take immediate action to rescind the certificate holder's approval to self insure and to suspend the certificate holder's operating rights.

*Id.* at 382.

In accordance with this mandate from the Commission, I.F.T. developed a Driver Certification Program imposing certain requirements on drivers employed by operators who participated in the self-insurance program. The Liability Coverage Insurance Agreement issued by I.F.T. to participating cab operators provided that only drivers certified under the self-insurance plan's Driver Certification Program would be covered and specifically prohibited covered

drivers from failing to meet the standards of the Driver Certification Program.

In early 1987, appellant Ostrov became a participant in the self-insurance program.[1] In accordance with the insurance plan's requirement, Ostrov signed an agreement assenting to the terms and conditions of the Driver Certification Program. One of the terms of this agreement provided:

9. When medical attention and/or work loss stems from an accident, the Plan's Service provider can, at their sole discretion, require independent medical evaluation(s). I understand and agree that a refusal by me to permit such evaluation(s) is cause for cancellation of the drivers registration certificate issued under the Plan.

On May 10, 1989, Ostrov was involved in an accident while driving his cab and allegedly sustained personal injuries. He gave timely notice of the accident to I.F.T. and sought payment of benefits under the self-insurance plan. Very shortly thereafter, I.F.T. requested that Ostrov submit to a medical examination. Ostrov refused despite a warning from I.F.T. that he could be decertified and coverage denied if he did not submit to the exam. At the end of June 1989, I.F.T. notified Ostrov that he had been decertified as an approved driver, that no insurance benefits would be paid by the self-insurance plan, that he was prohibited from operating a cab under that plan and that his company would be ejected from the plan entirely and fined if he continued to operate a cab despite his decertification.

On July 17, 1989, Ostrov filed a petition for preliminary injunction and a two count complaint against I.F.T. The first count of the complaint was in equity. In it Ostrov alleged that the medical examination provision of the Driver Certification Program was void as contrary to law because

1. Although the record is not entirely clear in this regard, it appears that Ostrov was the owner of a taxicab company named VVV Cab Co. Ostrov also drove a cab for his company. Thus, VVV Cab Co. appears to be the motor carrier certificate holder that became a participant in the self-insurance program and Ostrov was a certified driver for that company. He was, therefore, insured under the program.

it violated the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. §§ 1701—1798.4 (1984). Count I sought an award of compensatory and punitive damages and attorney's fees and a permanent injunction providing:

1) that the provisions of the I.F.T., Inc. administered Plan providing for independent medical evaluations of drivers at the sole discretion of the defendant I.F.T., Inc. are void as contrary to law;

2) that defendant I.F.T., Inc. is enjoined from enforcing or threatening to enforce the aforesaid provisions;

3) that defendant I.F.T., Inc. is prohibited from seeking medical examinations of claimants, except in accordance with the Pennsylvania Financial Responsibility Act;

4) that defendant I.F.T., Inc. is enjoined from threats of imposition of fines and "decertification" of the plaintiff.

In the second count, Ostrov sued I.F.T. in assumpsit. Ostrov alleged that he had incurred various medical bills as a result of his injuries and that I.F.T. had wrongfully refused to pay those sums to him as first party benefits. Thus, Ostrov sought recovery of those amounts, plus interest and attorney's fees, under the Financial Responsibility Law.

Ostrov's petition for preliminary injunction, filed ancillary to the complaint in equity contained in count I, prayed for a preliminary injunction immediately enjoining I.F.T. from acting in the manner complained of in count I.

Pursuant to a stipulation between the parties which was approved by the court on July 27, 1989, the matter was stayed until August 7th pending disposition of the preliminary objections that I.F.T. intended to file. The stipulation also provided that Ostrov was to be recertified until at least that date. On July 28th, I.F.T. filed preliminary objections arguing, *inter alia*, that Ostrov had failed to exhaust his administrative remedies by failing to petition the Commission for relief and that the trial court therefore lacked jurisdiction to decide the case. By order dated August 15, 1989, the trial court granted this preliminary objection as to

Count I of the complaint and dismissed that count. The preliminary objections to Count II were denied.[2]

The trial court's dismissal of count I was based on the court's perception that it did not have subject matter jurisdiction to decide the issues raised in count I because the Commission had exclusive jurisdiction over those issues. The court noted that the Commission had broad discretion over matters involving insurance of motor carriers and the exclusive authority to establish rules and regulations governing their self-insurance. The court further noted that the Commission had approved this self-insurance program and had approved the decertification of unqualified drivers. Thus, the trial court determined that Ostrov was required to exhaust his administrative remedies before the Commission and could not obtain relief from his decertification in an action in the court of common pleas.

Contrary to the analysis pursued by the trial court, we find that the issue in this case actually involves application of the doctrine of primary jurisdiction. Although the trial court found that it lacked subject matter jurisdiction to decide the issues raised by count I because jurisdiction over them has been allocated by the legislature solely to the Commission, we find that this case does not involve any question of subject matter jurisdiction. Rather, this case is appropriately to be decided under the doctrine of primary jurisdiction, which does *not* operate to oust the subject matter jurisdiction of the court.

The Supreme Court described this doctrine in *Jackson v. Centennial School District*, 509 Pa. 101, 107, 501 A.2d 218, 221 (1985), as follows:

In general, the doctrine of primary jurisdiction holds that where an agency has been established to handle a particular class of claims, the court should refrain from exercising its jurisdiction until the agency has made a

2. Ostrov appeals the dismissal of count I. Since count I sought a permanent injunction, the dismissal of that count constituted a denial of an injunction which is immediately appealable under Pa.R.A.P. 311(a)(4).

determination. Hence, although the court may have subject matter jurisdiction, the court defers its jurisdiction until an agency ruling has been made.

 Thus, the doctrine of primary jurisdiction applies where the administrative agency cannot provide a means of complete redress to the complaining party and yet the dispute involves issues that are clearly better resolved in the first instance by the administrative agency charged with regulating the subject matter of the dispute.[3] As the Supreme Court explained in its definitive opinion on primary jurisdiction, *Elkin v. Bell Telephone Co. of Pennsylvania,* 491 Pa. 123, 420 A.2d 371 (1980):

> ... the reality [is] that frequently *both* the courts and administrative agencies must each play roles in the adjudication of certain matters,....

> To accomodate the role of the court with that of the agency, the doctrine of primary jurisdiction (or primary exclusive jurisdiction) has been developed. Essentially, the doctrine creates a workable relationship between the courts and administrative agencies wherein, in appropriate circumstances, the courts can have the benefit of the agency's views on issues within the agency's competence.

> . . . .

> Therefore, where the subject matter is within an agency's jurisdiction *and* where it is a complex matter requiring special competence, with which the judge or jury would not or could not be familiar, the proper procedure

**3.** In contrast, the doctrine of exhaustion of administrative remedies requires that where a party *can* obtain complete relief before an administrative agency, he must exhaust all of his remedies before that agency before seeking judicial relief. *See Frye Construction, Inc. v. City of Monongahela,* 526 Pa. 170, ———–———, 584 A.2d 946, 948–949 (Pa.1991); *Jackson v. Centennial School District,* 509 Pa. 101, 501 A.2d 218 (1985); *Feingold v. Bell of Pennsylvania,* 477 Pa. 1, 383 A.2d 791 (1977). Even in a situation where exhaustion is required, however, the trial court is not deprived of jurisdiction. As the Supreme Court expressly stated in *Jackson, supra,* the requirement of exhaustion is no more than a judge-made rule which imposes a prerequisite on the court's exercise of its subject matter jurisdiction. *Jackson,* 509 Pa. at 107, 501 A.2d at 221 n. 5.

is for the court to refer the matter to the appropriate agency. Also weighing in the consideration should be the need for uniformity and consistency in agency policy and the legislative intent. Where, on the other hand, the matter is not one peculiarly within the agency's area of expertise, but is one which the courts or jury are equally well-suited to determine, the court must not abdicate its responsibility.

*Id.*, 491 Pa. at 131, 420 A.2d at 375–77.

■ Thus, *Elkin* established that in a case where the issues raised merit referral to an agency, but the agency cannot provide complete relief, the proper procedure is bifurcation of the action. The trial court must stay the action pending before it and refer to the administrative agency those issues over which the agency has primary jurisdiction. Those issues must then be decided by the agency. The action then proceeds in the trial court where remaining issues within the purview of the court are decided and appropriate relief is granted. *Id.*, 491 Pa. at 131–35, 420 A.2d at 376–77.

■ Therefore, the inquiry in this case is not whether the trial court had subject matter jurisdiction to entertain this dispute. Clearly, it did. Count I was a complaint in equity seeking an injunction and corollary relief in the form of damages over which a court of common pleas has jurisdiction. Count I of Ostrov's complaint should not have been dismissed for lack of subject matter jurisdiction.

It is equally clear that count I of the complaint should not have been dismissed under the exhaustion doctrine, since that doctrine does not apply where the administrative remedy available is incomplete. *See* note 3, *supra.* Here, Ostrov sought both injunctive relief and compensatory and punitive damages in count I. Since the Commission has no power to award damages to a private litigant in the position of Ostrov, it could not afford Ostrov complete relief and he had no duty to exhaust. *See Feingold v. Bell of Pennsyl-*

*vania,* 477 Pa. 1, 383 A.2d 791, 793 (1977) (Commission has no power to award damages for breach of contract with public utility); *DiSanto v. Dauphin Consolidated Water Supply Co.,* 291 Pa.Super. 440, 436 A.2d 197 (1981) (Commission has no power to award damages in tort action against public utility); *West Penn Power Co. v. Pennsylvania Public Utility Commission,* 104 Pa.Commw. 21, 521 A.2d 75, 79 (1987) (Commission is without power to grant a remedy to injured litigants; it may use its remedial powers only to govern public utility policy).

Given this conclusion, what remains for decision is whether the trial court should have found that primary jurisdiction over the issue raised concerning the propriety of Ostrov's decertification was in the Commission and that the action must be stayed while the Commission decides those issues. This question is to be resolved by focussing on the nature of the issue raised. As the *Elkin* court stated, if the issue is within the Commission's jurisdiction and is a complex matter requiring special competence, it should be referred to the agency. However, as the *Elkin* court also cautioned, a court should not be too hasty in referring a matter to an agency when the court is equally capable of resolving it. *Elkin,* 491 Pa. at 134, 420 A.2d at 377.

█ In applying these general principles to the specific question of which matters involving public utilities should be referred to the Commission, our courts have opined that where resolution of a party's claim "... depend[s] upon no rule or regulation predicated on the peculiar expertise of the PUC, no agency policy, no question of service or facilities owed to the general public, and no particular standard of safety or convenience articulated by the PUC", then the court should not refer the matter to the Commission. *DeFrancesco v. Western Pennsylvania Water Co.,* 499 Pa. 374, 378, 453 A.2d 595, 597 (1982). Thus, matters involving not what service the utility owed to the general public, but rather whether the service provided to a particular litigant

was negligently provided are for the courts to resolve. *Id.* On the other hand, matters involving the general reasonableness or adequacy of a utility's service to the public are within the primary jurisdiction of the Commission. *Id.; see also Morrow v. Bell Telephone Co. of Pa.*, 330 Pa.Super. 276, 479 A.2d 548 (1984).

■ Although at first glance it would appear that the proper procedure to have been followed in this case would have been bifurcation and referral to the Commission, on reflection we find that referral to the Commission is unwarranted. As we have indicated above, it is clear that the Commission has broad discretion in regulating insurance of motor carriers and is charged with regulating the conditions and qualifications under which motor carriers may self-insure. 66 Pa.C.S.A. § 512. In accordance with this authority, the Commission has promulgated regulations governing self-insurance. It would seem only logical and consistent with this regulatory scheme to refer to the Commission issues challenging the specific grounds on which a driver can be decertified.

The flaw in this analysis, however, is that it does not take sufficient account of the specific and limited challenge Ostrov has raised regarding his decertification. Ostrov's sole challenge to his decertification is that the medical examination requirement violates the Motor Vehicle Financial Responsibility Law (the "MVFRL"). He argues that Section 1796 of the MVFRL permits a medical examination of a claimant only by court order on good cause shown and that the Driver Certification Program is void insofar as it permits I.F.T. to demand medical examinations in its sole discretion. *See* 75 Pa.C.S.A. § 1796 (1984). As Ostrov's appellate brief states, "[t]he core issues presented to the Court of Common Pleas were whether the self-insurance plan is governed by the Financial Responsibility Act and whether provisions of the insurance contract contrary to the Financial Responsibility Act are enforceable." Brief for

Appellant at 11. Ostrov raises no other challenge to this provision. He does not contend that it violates the Commission's rules or regulations governing self-insurance of motor carriers, nor does he contend that it violates any other Commission rule, regulation or order setting forth standards for self-insurance.

We do not view this specific challenge as raising an issue that is within the Commission's primary jurisdiction. The fact that the Public Utility Code grants the Commission the power to prescribe the conditions and qualifications under which motor carriers may act as self-insurers does not grant the Commission the authority to decide whether the legislature intended certain requirements of the MVFRL, such as those regarding medical examinations, to apply equally to self-insurers as a matter of law. Rather, this is a pure legal question and it is peculiarly within the jurisdiction and expertise of a court to resolve it. Resolution of this question primarily entails statutory construction of the MVFRL. It requires close analysis of Section 1787 of the MVFRL, which provides certain statutory criteria for eligibility as a motor vehicle self-insurer and which charges the Department of Transportation, together with the Insurance Department, with the responsibility for promulgating regulations implementing section 1787. 75 Pa.C.S.A. § 1787.[4] It also requires careful construction of the precise language of Section 1796 regarding medical examinations of claimants for benefits. Such construction and analysis is within the purview of the courts and certainly does not fall within the areas in which the Commission has any particular expertise. We point out that this substantive question is not ripe for decision on appeal because it has not been decided by the trial court or briefed for appellate review.

4. The Commission itself has recognized this joint authority of the Department of Transportation regarding self-insurance. Section 32.15 of the Commission's self-insurance regulations specifically provides that Commission approval of self-insurance by a motor carrier is dependent upon issuance of a self-insurance certificate to the carrier by the Department of Transportation. *See* 52 Pa.Code § 32.15 (1987).

Issues concerning the applicability of insurance statutes to self-insurance plans such as that involved in this case have long been resolved by the courts. For example, in *Modesta v. Southeastern Pennsylvania Transportation Authority,* 503 Pa. 437, 469 A.2d 1019 (1983), the Supreme Court determined that the provisions of the Uninsured Motorist Act did apply to self-insurers and that under it, self-insurers were required to provide uninsured motorist coverage. There was no question that the court had jurisdiction to decide this question of law. Moreover, in so holding, the Court specifically overruled *Johnson v. Yellow Cab Co.,* 456 Pa. 256, 317 A.2d 245 (1974). In *Johnson,* the court had held that the Act did not apply to motor carrier self-insurers and suggested that it was for the Commission to decide whether such a requirement should be imposed on self-insurers within the jurisdiction of the Commission.

Thus, we reverse the trial court's dismissal of count I and remand this matter for disposition by the trial court in accordance with this opinion.

POPOVICH, J., files a dissenting statement.

POPOVICH, Judge, dissenting:

I respectfully dissent from the opinion of the majority as I am convinced that the subject matter herein is properly under the jurisdiction of the Public Utilities Commission and the Commonwealth Court. Accordingly, I would quash this appeal.