Barbara A. **MARTIN**, Appellant,

v.

**HALE PRODUCTS, INC.**

Superior Court of Pennsylvania.

Submitted April 17, 1997.

Filed Aug. 13, 1997.

---

Sidney L. Gold, Philadelphia, for appellant.

Judith E. Harris, Philadelphia, for appellee.

Before McEWEN, President Judge, HOFFMAN, J., and CERCONE, President Judge Emeritus.

CERCONE, President Judge Emeritus.

This is an appeal from an order that granted summary judgment in favor of appellee, Hale Products, Inc. We vacate and remand for further proceedings.

The trial court has summarized the factual and procedural predicate of this case in the following apt manner:

Barbara Martin [appellant] filed a complaint against her former employer, Hale, on April 24, 1995 claiming breach of contract in Count I, promissory estoppel in Count II, and fraudulent misrepresentation in Count III.

Barbara Martin was hired by Hale as a Director of Production Planning on May 2, 1994. Prior to being hired by Hale, Ms. Martin had held a position of employment as a Materials Manager at Heinemann Eaton Corporation for which she earned a salary of $54,000.00 per year and had various employee benefits such as 401K, medical benefits, as well as five weeks of vacation. For most of Ms. Martin's tenure at Heinemann, she worked in the Lawrenceville, New Jersey office. At this time, Ms. Martin lived with her husband and daughter at their home in Fairless Hills, Bucks county, Pennsylvania. In 1990, Ms. Martin was transferred to the Heinemann office in Salisbury, Maryland. After the transfer, Ms. Martin continued to live in Pennsylvania, spending the weekends with her husband and daughter in Fairless Hills, and making the drive to Salisbury every Monday morning. At no time during her employment at Heinemann did Ms. Martin become a Maryland resident.

In March, 1994, Ms. Martin sent a letter and resume to Hale in response to their advertisement in the Philadelphia Inquirer. Shortly thereafter, Ms. Martin was contacted by Joseph Bruckner, Director of Industrial Relations for Hale to schedule an interview for the advertised position.

When Ms. Martin arrived for her interview at Hale, she met first with Mr. Bruckner. Mr. Bruckner told Ms. Martin during the interview "that [Hale] was a good company to work for; it had been around for awhile; it was making money," which Ms. Martin noted was "just basically small talk to make me feel at ease." After meeting with Mr. Bruckner, Ms. Martin met next with Dale Clements, President of Hale's United States Operations. During the interview, Mr. Clements told Ms. Martin that the "Director of Production Planning" was a newly created position, "and that it was a position that they hoped to take into the future of Hale."

Mr. Clements told Ms. Martin during the interview about Hale's history, telling her that Hale "had been around for a long time," and that it was currently in a leverage buy out (LBO), and that it was "perhaps in the future looking to go public one to two years down the line." When Mr. Clements mentioned "going public," Ms. Martin stopped him and "asked him if he was inferring that there would be a takeover by another company purchasing Hale and he didn't say anything." Ms. Martin told Mr. Clements that she was concerned in that both of her former employers had been the subject of corporate takeovers. Further she told Mr. Clements that she saw the impact on new people and companies bringing in their own people and she did not want to be in that position. Mr. Clements said there would not be a takeover and that they had already been down that road. He said that Enterra had purchased them at one point prior to the LBO and that was not the way they wanted to go. When asked about the growth potential of the Director of Production Planning position, Mr. Clements also indicated to Ms. Martin that "he felt confident that [the Director's] position was going to be a long-term position."

Immediately after meeting with Mr. Clements on March 8, 1994, Ms. Martin met with several other Hale employees, including Jim Maher, Pete Hoynash, Del Lukens, Carl Arens, Jim Lonie, and Joe Dawidziuk. After these interviews were completed, Ms. Martin spoke once again

with Mr. Bruckner. Mr. Bruckner told Ms. Martin that Mr. Clements appeared "enthusiastic" about her, and asked her what the two of them had discussed. Ms. Martin told Mr. Bruckner about the discussion she had with Mr. Clements about the LBO and about Hale's going public to which Bruckner added that the takeover by Enterra "wasn't all that great, and that's why they went into this leveraged buy out." Ms. Martin said that no representations were made to her during the course of her interviews at Hale about the duration of her prospective employment with Hale.

At the time of Ms. Martin's interview, a company named IDEX had begun to explore the possibility of acquiring Hale. IDEX had been in the process of looking at Hale's performance numbers at the end of 1993. IDEX had come into [sic] look at Hale for the very first time in March of 1994 although discussions had been ongoing with people from the "west coast" for some time. In fact, Mr. Clements said that he was aware that a price had been agreed upon between IDEX and Hale at the time he interviewed Ms. Martin. This information was not disclosed to Ms. Martin at her interview. Although aware of the overtures by IDEX, Mr. Clements had been instructed by Peter Andrews, his superior, not to disclose any specifics relating to IDEX's interest, particularly because IDEX was a publicly-traded company and such information had to be kept confidential pursuant to SEC regulations.

Ms. Martin accepted the Director of Production Planning position at Hale, and a meeting was scheduled between Ms. Martin and Mr. Bruckner for March 21, 1994 to finalize her letter of employment. Mr. Bruckner told Ms. Martin that "[Hale] didn't give contracts; he said that a letter of employment would be what we would use." During the March 21, 1994 meeting, Ms. Martin told Mr. Bruckner that "I'm hoping to stay here and retire. I thought I would be retiring from Eaton, but I hope this is my last move," to which Mr. Bruckner responded, "I hope so too." A letter of employment was executed setting forth Ms. Martin's title, vacation, salary, and supervisor.

Ms. Martin began working at Hale on or about Monday, May 2, 1994. On Monday, May 9, 1994, during a general meeting for all employees, Mr. Clements announced that Hale was being acquired by IDEX. On May 9, 1994, Mr. Clements spoke with Ms. Martin about the acquisition. Mr. Clements apologized for not being able to tell her anything about the IDEX activity during her interview, but explained to her that it had been confidential information which he had not been at liberty to disclose. Ms. Martin agreed with him that it had been confidential information, but told Mr. Clements that he should have rejected her for the position because of the concern she had expressed to him about a takeover possibility during the interview.

On or about September 12, 1994, Mr. Bruckner told Ms. Martin that she was being laid off. Mr. Bruckner told Ms. Martin that the takeover by IDEX was "the worst thing" that ever happened at Hale, and that he was sorry it had happened. Ms. Martin filed suit against Hale on April 24, 1995, alleging breach of contract, promissory estoppel, and fraudulent misrepresentation. Hale filed a Motion for Summary Judgment which was granted by [the trial court] on September 26, 1996.

Trial court opinion dated December 23, 1996 at 1–5 (citations to the record omitted). Appellant filed a timely notice of appeal on October 23, 1996.

Appellant presents two issues for our consideration: (1) is a claim for fraudulent misrepresentation against an employer cognizable in the context of at-will employment if the action is based on a theory of fraud in the inducement and does not constitute a challenge to the decision to terminate the employee; and (2) did the trial court err in granting summary judgment with regard to appellant's fraudulent misrepresentation claim? Appellant has been careful to explain that she does not question the trial judge's dismissal of the first two counts of her complaint which alleged theories of breach of contract and promissory estoppel. Rather, this appeal asks us to determine whether Pennsylvania recognizes a cause of action for fraud in the inducement under the circum-

stances of this case, and whether appellant has successfully demonstrated that she was the victim of fraud in the inducement.

■ Our scope of review is plenary when reviewing the propriety of a trial court's entry of summary judgment. *First v. Zem Zem Temple,* 454 Pa.Super. 548, 551, 686 A.2d 18, 20 (1996).

> We must examine the entire record in the light most favorable to the non-moving party and resolve all doubts against the moving party when determining if there is a genuine issue of material fact. We will only reverse the lower court's grant of summary judgment if there is a manifest abuse of discretion. Summary judgment should be granted only in cases where the right is clear and free of doubt.

*Id.* (citations and quotations omitted). Because the trial court granted summary judgment in September of 1996, new Rule of Civil Procedure 1035.2 controls this case. Under the new rule,

> [a]fter the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>
> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa. R.C.P. No. 1035.2, 42 Pa.C.S.A. (adopted February 14, 1996, effective July 1, 1996). As the Rule clearly states, any party may move for summary judgment if an adverse party has failed to produce evidence of facts essential to their cause of action such as would require the issues to be submitted to a jury. *Eaddy v. Hamaty,* 694 A.2d 639, 640–41 (Pa.Super.1997).

■ Before addressing appellant's claims, we note the plethora of federal decisions upon which both appellant and appellee rely as support for their respective positions. The decisions of the federal district courts and courts of appeal, including those of the Third Circuit Court of Appeals, are not binding on Pennsylvania courts, even when a federal question is involved. *Chiropractic Nutritional Associates, Inc. v. Empire Blue Cross and Blue Shield,* 447 Pa.Super. 436, 445, 669 A.2d 975, 979–80 (1995). Decisions of the federal courts lower than the United States Supreme Court possess a persuasive authority. *Id.* Nevertheless, a federal court's interpretation of state law does *not* bind state courts. *Clay v. Advanced Computer Applications, Inc.,* 370 Pa.Super. 497, 506 n. 5, 536 A.2d 1375, 1380 n. 5 (1988) (*en banc*), *reversed in part on other grounds,* 522 Pa. 86, 559 A.2d 917 (1989). *See Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (state courts are the principal expositors of state law). Whether this Commonwealth recognizes a claim for fraudulent misrepresentation in the context of employment-at-will is obviously a question of Pennsylvania state law. Although it may not be unreasonable to cite one or two federal decisions and explain why it would be appropriate for the Superior Court to apply the rationale adopted by a federal court, the better course is to cite controlling Pennsylvania decisions.

■ Under Pennsylvania law, appellant's first issue is easily resolved. In 1985, the Superior Court determined that a claim of fraud in the inducement to accept employment is separately cognizable as a cause of action sounding in tort. *Lokay v. Lehigh Valley Cooperative Farmers, Inc.,* 342 Pa.Super. 89, 98, 492 A.2d 405, 410 (1985). A torts action grounded on an assertion of fraudulent inducement to accept employment is distinct from and does not depend upon a wrongful discharge claim or breach of employment contract claim. *Id.* In the employment context, lost future income is the appropriate measure of damages for a plaintiff who was fraudulently induced to leave otherwise secure employment. *Id.* at 100, 492 A.2d at 410.

■ The next question is whether appellant has made out a *prima facie* case of fraud. "Fraud" consists of "anything calcu-

lated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture." *Moser v. DeSetta,* 527 Pa. 157, 163, 589 A.2d 679, 682 (1991). To demonstrate fraud, the plaintiff must establish the following elements: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Gibbs v. Ernst,* 538 Pa. 193, 207–08, 647 A.2d 882, 889 (1994). The essence of fraud is "a misrepresentation fraudulently uttered with the intent to induce the action undertaken in reliance upon it, to the damage of its victim." *Moser, supra.*

The concealment of a material fact can amount to a culpable misrepresentation no less than does an intentional false statement. *Id.* Mere silence in the absence of a duty to speak cannot suffice to prove fraudulent concealment. *Sevin v. Kelshaw,* 417 Pa.Super. 1, 9, 611 A.2d 1232, 1236 (1992). However, an employer is not entitled to use concealment of material facts as a recruiting tool. *Lokay,* 342 Pa.Super. at 96–99, 492 A.2d at 408–410.

As already discussed, summary judgment is only appropriate if there is no genuine issue of material fact as to a necessary element of the cause of action or defense, or if the party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action. *See* Pa. R.C.P. No. 1035.2, *supra.* In this case, the pleadings and depositions, as summarized in the trial court opinion quoted above, establish that appellant considered the possibility of a corporate takeover to be a material fact in her decision of whether to accept employment with appellee. Appellant plainly indicated the importance she placed on this issue by repeatedly raising the point during her pre-employment interviews and by unequivocally stating that she did not want to become involved with a corporate takeover at Hale. When appellant specifically asked whether a corporate takeover was

likely, Dale Clements, President of appellee's United States Operations, explicitly responded that there would be *no* corporate takeover at Hale Products, Inc. Trial Court Opinion at 3 (citing Ms. Martin's deposition at 23). At the time of appellant's interviews, Mr. Clement had actual knowledge that a corporate takeover by IDEX was imminent. *Id.* at 3–4 (citing Mr. Clements' deposition at 15–23).

Relying on the representations made by appellee's corporate president, appellant resigned her otherwise secure position with Heinemann Eaton Corporation and accepted employment at Hale. *See generally Lokay, supra* (discussing corporate liability for the hiring practices of corporate officers). Seven days after appellant began working for Hale, Mr. Clements announced the corporate takeover by IDEX. Appellant lost her job with appellee because her position was eliminated as a direct result of IDEX's takeover.

Viewing these particulars in the light most favorable to appellant, the non-moving party, we find them adequate under *Gibbs* to establish a *prima facie* case of fraud such that the matter must be submitted to a jury. We are cognizant of the fact that because of Security and Exchange Commission regulations, Mr. Clements was not free to prematurely reveal that IDEX was in the process of acquiring Hale Products, Inc. However, Mr. Clements had no entitlement to lie about whether a corporate takeover was planned nor did he need to do so. He could have refrained from answering appellant's questions in this regard, he could have told her he could not make promises about future events, or he could have chosen another candidate for the position. What Mr. Clements was not entitled to do was to use concealment of material facts as a means of recruiting a new employee. *See Lokay,* 342 Pa.Super. at 96–99, 492 A.2d at 408–10. The trial court's grant of summary judgment cannot be sustained.

Order vacated. The case is remanded for trial. Jurisdiction relinquished.