In re INSURANCE STACKING LITIGATION.

Appeal of Patricia A. Leed, Dorothea E. Fasig, Edwin Ross, Jr., Vicki Muthler, and Russell L. and Joyce E. Floyd.

Superior Court of Pennsylvania.

Argued Feb. 15, 2000.
Filed June 8, 2000.
Reargument Denied Aug. 18, 2000.

Joseph Roda, Lancaster, for appellants.

Robert E. Kelly, Harrisburg, for Donegal Mut., participating party.

Robert J. McDade, Philadelphia, for Liberty Mut., participating party.

James C. Haggerty, Philadelphia, for Nationwide & Kemper, participating party.

Jonathan B. Sprague, Philadelphia, for USF&G, participating party.

Before EAKIN, JOYCE and TAMILIA, JJ.

JOYCE, J.:

¶ 1 This is an appeal from the final order of the trial court which sustained the preliminary objections in the nature of a demurrer filed by the Appellee-insurers.[1] For the reasons set forth below, we affirm the order entered by the trial court. Before addressing the merits of Appellants'

claims, we will recount the relevant facts underlying this appeal.

¶ 2 Appellants, Patricia Leed, Dorothea Fasig, Edwin Ross and Russell Floyd and his wife, Joyce, were insured under automobile liability policies issued by Appellees. Appellants each owned one vehicle that was insured under one policy. They subsequently discovered that their policies contained stacked uninsured and underinsured coverage. Accordingly, Appellants' premiums included a charge for stacking.

¶ 3 Upon discovering that their policies included premiums for stacking, Leed, Fasig, Ross and the Floyds individually commenced the instant class action suits against their respective insurers during the fall of 1995.[2] Muthler subsequently filed her own class action in February of 1996. By order entered by the trial court in February of 1996, the Leed, Fasig, Ross and Floyd actions were consolidated. Muthler's action was subsequently consolidated with the other cases by stipulation of the parties.

¶ 4 The insurers all filed preliminary objections, asserting therein that the matter had to be adjudicated by the insurance commissioner as Appellants were essentially challenging the rates charged by the insurers.[3] The trial court denied the insurers' preliminary objections based on the doctrines of exclusive jurisdiction and exhaustion of administrative remedies. However, the trial court sustained the preliminary objections asserting that the insurance commissioner had primary jurisdiction. Consequently, the trial court stayed the litigation and transferred the matter to the Pennsylvania Insurance Commissioner for a determination of

---

1. The insurers involved in this appeal are Donegal Mutual Insurance Company, United States Fidelity and Guaranty Company, Nationwide Insurance, Kemper National Insurance Company and Liberty Mutual Insurance Company.

2. The complaints asserted causes of action for negligence, breach of fiduciary duty, bad faith, fraud, punitive damages, unjust enrich-

ment, as well as violations of the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S.A. § 1738 and the Unfair Trade Practices Consumer Protection Law (UTPCPL), 73 P.S. § 201–2(4).

3. Some of the insurers attempted to remove the cases to federal district court. However, the federal court granted Appellants' motion to remand.

whether the premiums charged by the insurers wrongfully included a charge for stacking coverage.

¶ 5 While the matter was pending before the Insurance Commissioner, Appellants filed a motion to recall the case. Their motion was denied. Appellants also requested that the trial court enter an order coordinating similar actions that were pending in Philadelphia and Delaware counties. The trial court granted Appellants' request and directed that these cases be consolidated with Appellants' suit.

¶ 6 The Insurance Commissioner issued an opinion and order in February of 1998, in which she opined that the insurers' practice of charging Appellants a premium for stacking was lawful. After issuance of the Insurance Commissioner's decision, Appellants requested permission to file an amended complaint. The trial court granted Appellants' motion. Appellees thereafter filed preliminary objections in the nature of a demurrer. In July of 1999, the trial court entered an order sustaining the demurrer as to all counts and dismissed Appellants' complaint. Appellants timely appealed and present the following issues for review: (1) whether 75 Pa.C.S.A. § 1738 permits insurers to charge persons

insuring only one vehicle a premium for stacking; (2) whether the trial court's interpretation of section 1738 ignores the notice requirement; (3) whether the trial court erred in deferring to the Insurance Commissioner's interpretation of section 1738; (4) whether the trial court's decision conflicts with *Powell v. State Farm*, No. 100037 of 1994 (C.C.P. Lawrence County filed December 11, 1997); (5) whether the trial court erred in ruling that the stacking premium was proper because Appellants receive a benefit therefor; (6) whether the trial court erred in sustaining the demurrer as to Appellants' causes of action; and (7) whether the trial court erred in holding that Appellants have no judicial remedy for the charges imposed by the insurers.[4]

¶ 7 Because Appellants' third claim implicates the manner in which we will review this appeal, we begin our review with an analysis of this issue. Appellants assert that the trial court erred in giving deference to the Insurance Commissioner's interpretation of section 1738. Appellants' Brief at 22–26. For support, Appellants refer us to cases dealing with the doctrine of primary jurisdiction.[5] Appellants' Brief at 23–26. *See also* Appellants' Post–Submission Communication.[6]

4. We note with disapproval that Appellants' statement of the questions involved violates Pa.R.A.P. 2116(a) in that it exceeds sixteen lines and covers almost two full pages. However, Appellants' prolix statement of the issues does not substantially impede our ability to engage in effective and meaningful review. We will therefore overlook this procedural violation and review the merits of their claims. *See* Pa.R.A.P. 105(a) (permitting the appellate courts to disregard the requirements of the appellate procedural rules). We also note that the issues as framed in the statement of questions do not directly correlate with the matters argued in Appellants' brief. We have therefore rephrased the issues so that they correspond to the argument as it actually was presented.

5. After our initial opinion in this case was filed, Appellants filed an application for permission to file a post-submission communication pursuant to Pa.R.A.P. 2501(a). We granted Appellants' request and withdrew our opinion.

6. In their post-submission communication, Appellants refer us to *Children's Hospital of Philadelphia v. Independence Blue Cross*, No. 99–CV–5532, 2000 WL 504322 (E.D.Pa. filed April 26, 2000) (hereinafter *CHOP*). We remind Appellants' counsel that decisions of the federal district courts and courts of appeal, including those of the Third Circuit Court of Appeals, are not binding on Pennsylvania courts, even when a federal question is involved. *Martin v. Hale Products, Inc.*, 699 A.2d 1283, 1287 (Pa.Super.1997). Although decisions of the federal courts lower than the United States Supreme Court possess a persuasive authority, a federal court's interpretation of state law does not bind state courts. *Id.* We nonetheless reviewed the case submitted by Appellants and find that it is consistent with the authorities on which we have relied. Consequently, *CHOP* has no effect on our resolution of Appellants' claim.

¶ 8 The question of whether the trial court acted properly in referring a question to the Insurance Commissioner is distinct from the issue of the appropriate level of scrutiny to be applied to the Insurance Commissioner's decision. The cases cited by Appellants address the doctrine of primary jurisdiction rather than the degree of scrutiny to be applied to an agency's decision. Accordingly, Appellants' reliance on these decisions is misplaced and we must look elsewhere for guidance. As our Supreme Court has recently recognized:

> Courts traditionally accord an interpretation of a statutory provision by an administrative agency charged with administering that statute some deference. However, the interpretation of a statute is a question of law for the Court to resolve and when the Court is convinced that the interpretative regulation adopted by the administrative agency is clearly erroneous or is violative of legislative intent, the Court disregards the administrative agency's interpretation.

*Donnelly v. Bauer*, 553 Pa. 596, 608, 720 A.2d 447, 453 (1998) (citations omitted). This is precisely the standard utilized by the trial court here. Trial Court Opinion, filed 7/1/99, at 4–5 and 8. Accordingly, the trial court did not err in giving deference to the Insurance Commissioner's interpretation.

¶ 9 To the extent Appellants have preserved for appellate review the question of whether the trial court erred in referring this case to the Insurance Commissioner, we are not persuaded that the trial court acted improperly. As recognized by this Court:

> In general, the doctrine of primary jurisdiction holds that where an agency has been established to handle a particular class of claims, the court should refrain from exercising its jurisdiction until the agency has made its determination. Hence, although the court may have subject matter jurisdiction, the court de-

fers its jurisdiction until an agency ruling has been made.

> Thus, the doctrine of primary jurisdiction applies where the administrative agency cannot provide a means of complete redress to the complaining party and yet the dispute involves issues that are clearly better resolved in the first instance by the administrative agency charged with regulating the subject matter of the dispute.

> \* \* \*

> Essentially, the doctrine creates a workable relationship between the courts and administrative agencies wherein, in appropriate circumstances, the courts can have the benefit of the agency's views on issues within the agency's competence. Therefore, where the subject matter is within an agency's jurisdiction *and* where it is a complex matter requiring special competence, ... the proper procedure is for the court to refer the matter to the appropriate agency. Also weighing in the consideration should be the need for uniformity and consistency in agency policy and the legislative intent. Where, on the other hand, the matter is not peculiarly within the agency's area of expertise, but is one which the courts or jury are equally well-suited to determine, the court must not abdicate its responsibility.

*Ostrov v. I.F.T., Inc.*, 402 Pa.Super. 87, 586 A.2d 409, 413–414 (1991) (citations omitted) (emphasis in original). The *Ostrov* panel further noted that pure legal questions concerning the interpretation of provisions of the MVFRL are peculiarly within the jurisdiction and expertise of the courts rather than the Public Utility Commission (PUC). *Id.*, 586 A.2d at 415.

¶ 10 While the instant case involves an issue of statutory interpretation, the significant distinction between the instant matter and *Ostrov* is that the entities involved are the Insurance Department and the Insurance Commissioner rather than the PUC. The legislature has specifically re-

served questions of unfair insurance practices and automobile insurance rates to the Insurance Commissioner. *See* 40 P.S. § 1171.7 (providing that the Insurance Commissioner is charged with enforcing the Unfair Insurance Practices Act, 40 P.S. § 1171.1–§ 1171.15); 75 Pa.C.S.A. § 2001–§ 2009 (indicating that motor vehicle insurance rate matters are to be determined by the Insurance Commissioner). Moreover, it is clear from the trial judge's opinion that he viewed the instant case as a challenge to the insurers' practices and premiums, in light of section 1738, rather than a pure question of statutory interpretation. Trial Court Opinion, filed 10/10/96, at 3–4 and 7. The issue certified to the Insurance Commissioner, although it necessarily requires an interpretation of the statute, falls within the Insurance Commissioner's area of peculiar expertise. Appellants' challenge to the referral is therefore without merit.

¶ 11 With the exception of Appellants' fourth and seventh issues, their other allegations of error all concern the interpretation and application of the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S.A. § 1738. We must therefore examine the statute in order to address Appellants' claims. Before doing so, we note that:

> Our rules of statutory construction make clear that in interpreting statutes we must at all times seek to ascertain and effectuate the legislative intent underlying the enactment of the particular statute(s). Where the words of a statute are clear and free from ambiguity[,] the legislative intent is to be gleaned from those very words. Where, however, the statute is unclear or susceptible of differing interpretations, the courts must look to the necessity of the act, the object to be attained, the circumstances under which it was enacted and any legislative or administrative interpretations thereof. In ascertaining the legislative intent of a particular statute it is presumed, *inter alia*, that the legislature

did not intend a result that is absurd or unreasonable nor one that would be violative of the United States Constitution or the Constitution of this Commonwealth. It is also presumed that the legislature intends to favor the public interest as opposed to any private interest.

*Pennsylvania Financial Responsibility Assigned Claims Plan v. English*, 541 Pa. 424, 430–431, 664 A.2d 84, 87 (1995) (citations omitted) (emphasis in original). We will examine the statute with the above considerations in mind.

**§ 1738. Stacking of uninsured and underinsured benefits and option to waive**

**(a) Limit for each vehicle.**—When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

**(b) Waiver.**—Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

**(c) More than one vehicle.**—Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

75 Pa.C.S.A. § 1738(a)–(c).

¶ 12 In reviewing section 1738 in light of the considerations outlined in *English, su-*

*pra,* and with due deference to the Insurance Commissioner's opinion, it appears that subsection (a) provides for the stacking of uninsured or underinsured benefits whenever more than one vehicle is insured under one or more policies. 75 Pa.C.S.A. § 1738(a), *supra.* The statute thus allows an injured person to recover the sum of the limits of coverage for each motor vehicle as to which he or she is an insured.[7] *Id.* An insured may therefore stack coverages not only where more than one vehicle is insured under a policy (intra-policy stacking), but also where more than one vehicle is insured under more than one policy (inter-policy stacking).

¶ 13 Although the statute is phrased in language that mandates the stacking of benefits, subsection (b) permits stacking to be waived by those who are named insureds. 75 Pa.C.S.A. § 1738(b), *supra.* Section 1738 does not restrict waiver to those who are purchasing coverage for more than one vehicle. *Id.* Rather, it arguably allows anyone who is a named insured to waive stacking. *Id.*

¶ 14 While the statute is clear up to this point, ambiguity arises in attempting to construe subsections (a) and (b) with the remaining provisions. Under subsection (c), the legislature has specifically required that named insureds who purchase uninsured or underinsured benefits for more than one vehicle under a policy must be provided with the opportunity to waive stacking. *Id.,* § 1738(c). The legislature has thus circumscribed the class of named insureds to whom notice must be given: that is, only those who purchase coverage for more than one vehicle under a single policy are to receive the notice prescribed in subsection (d).

¶ 15 If we were to construe section 1738 to require that notice be given to all named insureds, we would necessarily have to disregard the limiting language contained in subsection (c), a result that violates our rules of statutory construction. *See* 1 Pa.C.S.A. § 1922(2) (providing that in ascertaining the intention of the General Assembly, the courts must presume that the entire statute was intended to be effective and certain). It is nonetheless possible to give effect to the entire statute by construing subsections (b) and (c) together such that only named insureds who purchase coverage for more than one vehicle under a single policy will be entitled to notice and the opportunity to waive stacking. This interpretation also is consistent with subsection (d), which prescribes the form to be used to effectuate a stacking waiver. *See* 75 Pa.C.S.A. § 1738(d) (providing that the named insured is rejecting the stacking of the limits of coverage for each vehicle insured under the policy). Had the legislature intended all named insureds to waive stacking, it would have utilized different language in subsection (d). The fact that it did not do so thus suggests that the legislature only intended to allow named insureds who have more than one vehicle insured under a policy to waive stacking.

¶ 16 Having discerned the proper interpretation to be accorded section 1738, we must next turn to the fundamental question of whether the trial court properly sustained Appellees' preliminary objections.

> Where a preliminary objection in the nature of a demurrer is sustained, an appellate court's review is limited. All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purpose of this review. The question presented by demurrer is whether, on the facts averred, the law

7. An insured is defined as either an individual identified by name as an insured in a policy, a spouse or relative of the named insured, or a minor in the custody of the named insured or the named insured's relative. 75 Pa.C.S.A. § 1702. However, some insurance policies also define an insured as a person who is occupying an automobile that they do not own. *See, e.g.,* Appellees' Joint Brief in Support of Preliminary Objections to Amended Complaint, Exhibit A (Donegal Mutual's Sample Policy).

says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Moser v. Heistand,* 545 Pa. 554, 559, 681 A.2d 1322, 1325 (1996) (citation omitted). *Accord Booze v. Allstate Insurance,* 2000 Pa.Super. 1112, ¶ 3, 750 A.2d 877, 878–79 (2000). We need not accept a party's allegations as true to the extent they constitute conclusions of law. *Scarpitti v. Weborg,* 530 Pa. 366, 368, 609 A.2d 147, 148 (1992); *Booze, supra.*

¶ 17 All of Appellants' causes of action are premised upon their belief that Appellees' conduct violates section 1738 by charging Appellants a premium for an illusory benefit and in failing to inform them of their opportunity to waive stacking. Appellants' Brief at 28–35; Appellants' Amended Complaint, filed 9/10/98, at paragraphs 56, 61, 64, 66–71, 74–77, 79 and 82. As previously discussed, subsections (b), (c) and (d) must be construed together such that only named insureds who purchase coverage for more than one vehicle under a policy may waive the stacking of uninsured or underinsured benefits. 75 Pa.C.S.A. § 1738(a), (b), (c) and (d), *supra.* Section 1738 thus did not require Appellees to apprise Appellants of the opportunity to waive stacking.

¶ 18 Nor have Appellees violated section 1738 by charging Appellants the stacked rate. With the exception of subsection (c), which authorizes a reduction in premiums to named insureds who exercise their option to waive coverage, section 1738 is silent as to the premiums that insurers may charge for the coverage provided. Rather, such matters fall within the exclusive purview of the Insurance Commissioner, *see* the Motor Vehicle Insurance Rate Review Procedures Act, 75 Pa.C.S.A. § 2001– § 2009, who has resolved the issue adversely to Appellants, *see* Insurance Commissioner's Declaratory Opinion and Order, filed 2/23/98, at 14–15. We thus agree with the Insurance Commissioner

that nothing in section 1738 explicitly precludes an insurer from charging its single policy insureds a stacking premium.

¶ 19 Appellants' contention that they receive an illusory benefit is likewise unfounded. By enacting section 1733 and 1738(a) and by confining the class of those who can waive stacking to named insureds who purchase coverage for more than one vehicle under a single policy, it appears that the legislature has expressed a clear preference in favor of stacking. All those who are insured in Pennsylvania pay for this privilege, via increased rates for uninsured or underinsured motorist benefits, except for those who are permitted to waive stacking under section 1738(b). In this manner, the risk and cost associated with stacking is shared by all who purchase insurance, except for those who exercise their option to waive, and thereby helps to maintain premiums at a more affordable level.

¶ 20 This interpretation is supported by a review of the legislative history. In discussing the effect of stacking under section 1738, Representative George Saurman stated:

> You are allowed to stack, unless you say you do not want to, which means that you can add together the protection for each of your automobiles and collect totally on any one accident and all the ones who have only one car are going to subsidize that.... [T]hat is what we will be voting for if we put this into place.

Legislative Journal of the House, Vol. I, No. 10 at 209 (February 7, 1990). While the views expressed are only those of one legislator, they nonetheless suggest that, to the extent this issue was considered, the legislature contemplated that those individuals who purchase coverage for only one car will pay increased premiums to help subsidize the higher costs associated with Pennsylvania's virtually mandatory stacking policy.

¶ 21 Moreover, there are instances, such as when a person is injured while occupying a vehicle that is not his own, in which he may be entitled to recover uninsured or underinsured benefits under the host vehicle's policy as well as his own policy. *See, e.g., State Farm Insurance Companies v. Ridenour*, 435 Pa.Super. 463, 646 A.2d 1188, 1191 (1994), *appeal denied*, 540 Pa. 585, 655 A.2d 516 (1994) (providing that employer's insurer would have been primarily liable for underinsured benefits if insured had not foreclosed her entitlement to recovery by settling with the tortfeasor; but insured was not precluded from recovering underinsurance benefits under her own policy to the extent that her injuries exceeded the limits of her employer's underinsurance; while employer's carrier would have been primarily liable, insured's actions in releasing the third-party tortfeasor foreclosed her entitlement to recover under employer's policy); 75 Pa.C.S.A. § 1733(a) (providing that where multiple policies apply, payment shall be made first from the policy covering a motor vehicle occupied by the injured person, followed by payment from a policy covering a motor vehicle not involved in the accident under which the injured person is an insured). Recovery of uninsured or underinsured benefits in this type of case constitutes inter-policy stacking within the meaning of section 1738(a). Appellants thus benefit from this type of inter-policy stacking. Again, the cost of providing such coverage is necessarily included in the policy premiums charged to Appellants and other insureds.

¶ 22 Viewed in this manner, Appellants have therefore failed to set forth a cause of action under section 1738.[8] Because their remaining causes of action are premised upon Appellees' alleged violation of section 1738, Appellants likewise cannot recover on these alternate theories. The trial court accordingly did not err in sustaining Appellees' demurrer.

¶ 23 Appellants next assert that the trial court's decision here is inconsistent with the decision in *Powell v. State Farm*, No. 100037 of 1994 (C.C.P. Lawrence County filed December 11, 1997).[9] *Powell* involved a situation in which the insured owned two separate vehicles. *Powell*, slip op. at 2. At the time the vehicles were insured, it was State Farm's practice to issue a separate policy for each vehicle. *Id.* The insured waived his right to stack underinsured benefits under each policy. *Id.* Notwithstanding the insured's waiver and concomitant reduction in premium, the trial judge refused to enforce the waivers based on his interpretation of section 1738. *Id.* at 5–9. Specifically, the trial court found that the notice and waiver provisions were only applicable to those who insure more than one vehicle under a policy. *Id.* at 8. Because Powell insured separate vehicles under separate policies, the trial court believed that the waivers were ineffectual. *Id.*

¶ 24 *Powell* was a decision by the Court of Common Pleas which, while entitled to consideration, is of no binding precedential authority outside of Lawrence County. In any event, *Powell* is distinguishable in that it involved a claim for underinsured benefits under two different policies, each of which insured a separate vehicle. Appellants only insure a single vehicle under a single policy of insurance. Unlike the insured in *Powell*, Appellants did not waive their right to stack benefits and are not making a claim for multiple benefits. Moreover, *Powell* did not address the question of whether a premium may be charged for stacking. *Powell* is therefore inapposite.

8. Even if Appellants had proved that Appellees had violated the statute, no private cause of action would exist, as the MVFRL does not provide insureds a remedy for the violation of its provisions. *Donnelly*, 553 Pa. at 610–611, 720 A.2d at 454.

9. A copy of *Powell* was appended to Appellants' Memorandum of Law opposing Appellees' preliminary objections to the amended complaint.

¶ 25 Appellants' final contention is that the trial court erred in relying on this Court's decision in *Fay v. Erie Insurance Group*, 723 A.2d 712 (Pa.Super.1999) to support its conclusion that Appellants have no judicial remedy for Appellees' alleged conduct. Appellants' Brief at 46–48. Appellants have misread our decision in *Fay* as well as the trial court's opinion. In *Fay*, the insureds were covered under two automobile insurance policies. *Fay*, 723 A.2d at 713. Each policy provided the Fays with first party benefits, including accidental death benefits, as required by the MVFRL, 75 Pa.C.S.A. § 1711. *Id.* Although benefits were provided under each policy, section 1717 of the MFVRL prohibits insureds from stacking first party benefits. Mr. Fay died as a result of injuries sustained in an automobile accident. *Id.* When Mrs. Fay's request for duplicative death benefits was denied, she filed suit under the Unfair Trade Practices Consumer Protection Law (UTPCPL), 73 P.S. § 201–2(4), alleging that the insurer had misrepresented the benefits by charging premiums for each accidental death benefit provided, even though only one recovery could be had. *Id.* at 714. On appeal, this Court rejected Mrs. Fay's claims. We further noted that if the insurer's practice seemed unfair or objectionable, it was a matter that was best left for the legislature or the Insurance Commissioner to decide. *Id.* at 715.

¶ 26 Our decision in *Fay* did not hold that no judicial remedy existed. We instead merely indicated that if the premiums charged by the insurers, as authorized by law, were unfair, then it was a matter for either the legislature or the Insurance Commissioner to resolve. *Fay*, 723 A.2d at 715. The trial judge here did no more than recognize these principles. We thus do not fault his decision on this basis.

¶ 27 It is not the function of this Court to reassess the rates charged by insurers for uninsured or underinsured motorist benefits; these matters are within the jurisdiction of the legislature or the Insurance Commissioner. As an intermediate appellate court, it is not within the scope of our duties to rewrite the law, announce new precepts of law or expand existing legal doctrines. *Moses v. T.N.T. Red Star Express*, 725 A.2d 792, 801 (Pa.Super.1999), *appeal denied*, 559 Pa. 692, 739 A.2d 1058 (1999). Instead, we are bound to apply the law as written and must determine whether the trial court committed an error of law or abuse of discretion in adjudicating the matter before it. Having reviewed the applicable law, we are not persuaded that the trial judge erred or abused his discretion here and accordingly affirm his disposition.

¶ 28 Order affirmed.