Vanessa STOLOFF, individually, and on behalf of all others similarly situated, Appellant

v.

The NEIMAN MARCUS GROUP, INC., Appellee.

Superior Court of Pennsylvania.

Argued Jan. 11, 2011.

Filed May 23, 2011.

Thomas M. Marrone, Philadelphia, for appellant.

James W. Gicking, Philadelphia, for appellee.

BEFORE: STEVENS, P.J., FREEDBERG, and PLATT *, JJ.

OPINION BY STEVENS, P.J.:

Vanessa Stoloff ("Ms. Stoloff"), individually and on behalf of all others similarly situated (collectively, "Appellants"), files this appeal from the class-action order entered in the Philadelphia County Court of Common Pleas, which sustained preliminary objections filed by Appellee, The Neiman Marcus Group, Inc. ("Neiman Marcus"). Appellants contend that the trial court erred in dismissing its complaint

* Retired Senior Judge assigned to the Superior Court.

against Neiman Marcus for lack of subject-matter jurisdiction.

We hold that any dispute involving the payment of sales tax must first be resolved by the Pennsylvania Revenue Department ("the Department"); however, the trial court nonetheless erred in dismissing the entire complaint for lack of subject-matter jurisdiction, as the doctrine of primary jurisdiction applies. Accordingly, we reverse.

The basis for Ms. Stoloff's complaint arises from her purchase-by-telephone of a "black jersey dress" from Neiman Marcus's catalog, to which Neiman Marcus added a 6% sales tax. In their complaint, Appellants insisted that Neiman Marcus regularly required its Pennsylvania customers to pay a sales tax on clothing, even though most articles of clothing are not subject to the Pennsylvania tax.[1] As a result, Appellants filed a class-action complaint against Neiman Marcus, alleging breach of contract, unjust enrichment, violation of the consumer protection law, and conversion, in addition to seeking injunctive relief.

After Appellants amended their complaint in response to Neiman Marcus's initial preliminary objections, Neiman Marcus filed preliminary objections claiming that the Philadelphia County Court of Common Pleas lacked subject-matter jurisdiction. After a hearing, at which the trial court was in receipt of an advisory opinion by the Department, the trial court determined that Appellants did not exhaust their administrative remedies, thus depriving the trial court of subject-matter jurisdiction.[2] Accordingly, the court granted Neiman Marcus's preliminary objection and dismissed the complaint. This timely appeal followed, in which Appellant raises the following claim: "Did the trial court have subject matter jurisdiction over [Appellants'] claim?" Appellant's Brief at 2.[3]

Appellants argue that the trial court erroneously limited the scope of its jurisdiction because the Supreme Court of Pennsylvania has prescribed a "sweeping grant of jurisdiction" to the Courts of Common Pleas. Appellants' Brief at 6 (quoting *In re Administrative Order No. 1–M.D.–2003*, 594 Pa. 346, 356, 936 A.2d 1, 6 (2007)). Appellants contend that because they are not filing an action against a government entity, but rather a private entity, their claims are not subject to the statutes gov-

---

1. Certain clothing items remain subject to taxation, including, *inter alia,* accessories, ornamental wear, and formal apparel. *See* 72 P.S. § 7204(26). Most clothing items, however, are not subject to taxation. *See id.*

2. Neiman Marcus originally sought an advisory opinion from the Department, asking whether it properly taxed the item in question. *See* The Department's Supplemental Mem. of Law in Supp. of Mot. for Protective Order & To Quash Subpoena, filed 8/22/09, at 1. The Department submitted an advisory opinion agreeing with Neiman Marcus that the item purchased was taxable. *Id.* Ms. Stoloff responded by issuing a subpoena to the Department, demanding members of the legal staff to testify about, and produce documents regarding, the advisory opinion. *Id.* In its

motion to quash the subpoena, the Department opined: "It is the Department's position that the issuance of the above-mentioned subpoenas, as well as the prosecution of this lawsuit, invade the Department's province as the sole entity responsible for the assessment, enforcement, and collection of sales tax in the Commonwealth of Pennsylvania." *Id.* at 2. The Department further argued: "[A]ny prospect that this lawsuit will proceed and ultimately produce a result contrary to the Department's own determination, as is sought by [Ms. Stoloff] in this matter, is improper, contrary to public policy, and most significantly, will not bind the Department." *Id.*

3. Appellants complied timely with the court's Pa.R.A.P. 1925(b) order, and the court filed a responsive opinion.

erning tax-refund claims from this Commonwealth. Thus, Appellants conclude that because they have not invoked those statutes, no statute or court decision places their claims within the exclusive jurisdiction of a particular court or any agency, thereby giving the Court of Common Pleas jurisdiction. We disagree.

■ Whether a statute provides an exclusive administrative remedy involves an issue of statutory interpretation. *White v. Conestoga Title Ins. Co.*, 982 A.2d 997, 1002 (Pa.Super.2009), *appeal granted in part*, 606 Pa. 50, 994 A.2d 1083 (2010). "Statutory interpretation presents a question of law and, as such, our standard of review is *de novo*, while our scope of review is plenary. Additionally, issues concerning the jurisdiction of the trial court also present questions of law and are subject to *de novo* review." *Id.*

"When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). "Words and phrases shall be construed according to the rules of grammar and according to their common and approved usage...." *Id.*, § 1903(a). "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." *Id.*, § 1921(a). "When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent." *Chanceford Aviation Properties, L.L.P. v. Chanceford Twp. Board of Supervisors*, 592 Pa. 100, 923 A.2d 1099, 1104 (2007) (quoting *Hannaberry HVAC v. WCAB (Snyder, Jr.)*, 575 Pa. 66, 834 A.2d 524, 531 (2003)) (internal citation omitted). "It is only when the statute's words are not explicit that the legislature's intent may be ascer-

tained by considering the factors provided in 1 Pa.C.S. § 1921(c)." *Id.*
*Reid v. City of Philadelphia*, 598 Pa. 389, 393, 957 A.2d 232, 235 (2008).

Our standard of review mandates that on an appeal from an order sustaining preliminary objections which would result in the dismissal of suit, we accept as true all well-pleaded material facts set forth in the appellants' complaint and all reasonable inferences which may be drawn from those facts. This standard is equally applicable to our review of PO's in the nature of a demurrer. Where, as here, upholding sustained preliminary objections would result in the dismissal of an action, we may do so only in cases that are clear and free from doubt.

To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred. Any doubt should be resolved by a refusal to sustain the objections. We review for merit and correctness—that is to say, for an abuse of discretion or an error of law. This case was dismissed at the preliminary objections stage on issues of law; our scope of review is thus plenary.
*Ellenbogen v. PNC Bank, N.A.*, 731 A.2d 175, 181 (Pa.Super.1999) (citations, internal quotations, and footnote omitted).

At issue are the following sections of the Pennsylvania Tax Code:

§ 7202. **Imposition of tax**

(a) There is hereby imposed upon each separate sale at retail of tangible personal property or services, as defined herein, within this Commonwealth a tax of six per cent of the purchase price, which tax shall be collected by the vendor from the purchaser, and shall be paid over to the Commonwealth as herein provided.

## § 7204. Exclusions from tax

The tax imposed by [72 P.S. § 7202] shall not be imposed upon[:]

\* \* \*

(26) The sale at retail or use of all vesture, wearing apparel, raiments, garments, footwear and other articles of clothing worn or carried on or about the human body but all accessories, ornamental wear, formal day or evening apparel, and articles made of fur on the hide or pelt or any material imitative of fur and articles of which such fur, real, imitation or synthetic, is the component material of chief value, but only if such value is more than three times the value of the next most valuable component material, and sporting goods and clothing not normally used or worn when not engaged in sports shall not be excluded from the tax.

## § 7225. Tax held in trust for the Commonwealth

All taxes collected by any person from purchasers in accordance with this article and all taxes collected by any person from purchasers under color of this article which have not been properly refunded by such person to the purchaser shall constitute a trust fund for the Commonwealth, and such trust shall be enforceable against such person, his representatives and any person (other than a purchaser to whom a refund has been made properly) receiving any part of such fund without consideration, or knowing that the taxpayer is committing a breach of trust: Provided, however, That (sic) any person receiving payment of a lawful obligation of the taxpayer from such fund shall be presumed to have received the same in good faith and without any knowledge of the breach of trust. Any person, other than a taxpayer, against whom the department makes any claim under this section shall have the same right to petition and appeal as is given taxpayers by any provisions of this part.

## § 7237. Collection of tax

(a) **Collection by Department.** The department shall collect the tax in the manner provided by law for the collection of taxes imposed by the laws of this Commonwealth.

(b) **Collection by Persons Maintaining a Place of Business in the Commonwealth.**

(1) Every person maintaining a place of business in this Commonwealth and selling or leasing tangible personal property or services ... the sale or use of which is subject to tax shall collect the tax from the purchaser or lessee at the time of making the sale or lease, and shall remit the tax to the department.

(2) Any person required under this article to collect tax from another person, who shall fail to collect the proper amount of such tax, shall be liable for the full amount of the tax which he should have collected.

## § 7252. Refunds

The department shall, pursuant to the provisions of [72 P.S. §§ 7253, 7254], refund all taxes, interest and penalties paid to the Commonwealth under the provisions of this article and to which the Commonwealth is not rightfully entitled . . . .

## § 7253. Refund petition

(a) [T]he refund or credit of tax, interest, or penalty provided for by [72 P.S. § 7252] shall be made **only** where the person who has actually paid the tax files a petition for refund with the department under Article XXVII within the time limits of section 3003.1.

72 P.S. §§ 7202(a), 7204(26), 7225, 7237, 7252, 7253(a) (emphasis added).

We begin with a discussion of the trial court's jurisdiction in the instant matter. The trial court concluded that it lacked subject-matter jurisdiction because Appellants failed to exhaust their administrative remedies. As our Courts have observed, however, the doctrine of exhaustion of administrative remedies does not implicate subject-matter jurisdiction: "Frequently, it is said that the failure to exhaust administrative remedies divests the court of 'jurisdiction.' This is not subject-matter jurisdiction, however, but rather the judge-made rule that exhaustion of administrative remedies is a prerequisite to the court's exercise of subject-matter jurisdiction." *Jackson v. Centennial Sch. Dist.*, 509 Pa. 101, 107 n. 5, 501 A.2d 218, 221 n. 5 (1985).

In determining the possible types of trial court jurisdiction over the instant matter, we also observe the doctrine of primary jurisdiction:

In general, the doctrine of primary jurisdiction holds that where an agency has been established to handle a particular class of claims, the court should refrain from exercising its jurisdiction until the agency has made a determination. Hence, although the court may have subject matter jurisdiction, the court defers its jurisdiction until an agency ruling has been made.

[*Jackson*, 509 Pa. at 107, 501 A.2d at 221.] Thus, the doctrine of primary jurisdiction applies where the administrative agency cannot provide a means of complete redress to the complaining party and yet the dispute involves issues that are clearly better resolved in the first instance by the administrative agency charged with regulating the subject matter of the dispute. As the Supreme Court explained in its definitive opinion on primary jurisdiction, *Elkin v.*

*Bell Telephone Co. of Pennsylvania*, 491 Pa. 123, 420 A.2d 371 (1980):

... the reality [is] that frequently **both** the courts and administrative agencies must each play roles in the adjudication of certain matters, ....

To accommodate the role of the court with that of the agency, the doctrine of primary jurisdiction (or primary exclusive jurisdiction) has been developed. Essentially, the doctrine creates a workable relationship between the courts and administrative agencies wherein, in appropriate circumstances, the courts can have the benefit of the agency's views on issues within the agency's competence.

\* \* \*

Therefore, where the subject matter is within an agency's jurisdiction **and** where it is a complex matter requiring special competence, with which the judge or jury would not or could not be familiar, the proper procedure is for the court to refer the matter to the appropriate agency. Also weighing in the consideration should be the need for uniformity and consistency in agency policy and the legislative intent. Where, on the other hand, the matter is not one peculiarly within the agency's area of expertise, but is one which the courts or jury are equally well-suited to determine, the court must not abdicate its responsibility.

*Id.* at 131, 420 A.2d at 375–77.

Thus, *Elkin* established that in a case where the issues raised merit referral to an agency, but the agency cannot provide complete relief, the proper procedure is bifurcation of the action. The trial court must stay the action pending before it and refer to the administrative agency those issues over which the agency has primary jurisdiction. Those

issues must then be decided by the agency. The action then proceeds in the trial court where remaining issues within the purview of the court are decided and appropriate relief is granted. *Id.* at 131–35, 420 A.2d at 376–77.

*Ostrov v. I.F.T., Inc.*, 402 Pa.Super. 87, 586 A.2d 409, 413–14 (1991).

In the case *sub judice,* Appellants raised the following claims in their complaint: breach of contract, unjust enrichment, violation of the consumer protection law, conversion, and injunctive relief. Appellants also requested relief in the form of, *inter alia,* an injunction and damages.[4] As the *Ostrov* Court observed, these are requests for relief over which the trial court has subject-matter jurisdiction. Accordingly, the trial court erred in granting preliminary objections on the ground that it lacked subject-matter jurisdiction.

■ Further, we conclude that the doctrine of exhaustion of administrative remedies is inapplicable in the instant case. As the *Ostrov* Court concluded:

> It is equally clear that count I of the complaint should not have been dismissed under the exhaustion doctrine, since that doctrine does not apply where the administrative remedy available is incomplete. Here, Ostrov sought both injunctive relief and compensatory and punitive damages in count I. Since the Commission has no power to award damages to a private litigant in the position of Ostrov, it could not afford Ostrov complete relief and he had no duty to exhaust.

*Id.* at 414 (citation omitted). Similarly, the instant complaint sought both injunctive relief and compensatory and punitive damages. Although not classified under any particular or specific claim, the overall complaint sought relief which the Department cannot grant. The trial court therefore erred in dismissing the complaint based entirely on the failure of Appellants to exhaust administrative remedies.[5]

■ As a result, we find that the doctrine of primary jurisdiction applies. Appellants rely on Section 7225 for the proposition that "private parties have a duty to refund improperly collected taxes," and the apparent proposition that the Court of Common Pleas properly has primary jurisdiction in this case. *See* Appellants' Brief at 7.[6] Appellant's interpretation of Section 7225 is misplaced. Section 7225 unambiguously states anyone who collects taxes that have not been properly refunded to a purchaser must hold such amount in a trust fund for the Commonwealth. 72 P.S. § 7225. This language does not elevate a purchaser to the status of a private party who may bypass administrative remedies. *See Maryland Cas. Co. v. Odyssey Contracting Corp.*, 894 A.2d 750, 756 (Pa.Super.2006) (observing that, in a claim involving the doctrine of exhaustion of administrative remedies, the goal is to have the claims "addressed by the body having

---

4. Appellants did not distinguish which type of relief they sought for each claim. Rather, they included a general demand for relief at the end of the complaint. *Compare with Ostrov*, 586 A.2d at 414 (observing that the first count of the complaint specifically requested an injunction and corollary relief in the form of damages).

5. As a result, we must also disagree with the decision in *Heaven v. Rite Aid Corp.*, 2000 WL 33711049, at *1 (Pa.Com.Pl. Oct. 27, 2000)

(memorandum opinion), upon which both Appellee and the trial court rely. We are not bound by decisions of the Courts of Common Pleas, and the *Heaven* court's decision to dismiss that complaint, which contained common-law claims and sought compensatory damages, punitive damages, and an injunction, conflicts with this Court's decision in *Ostrov.*

6. Neither party, nor the trial court, mentioned the doctrine of primary jurisdiction.

expertise in the area").[7] Reading Sections 7225 and 7252 together, we determine that once a purchaser pays the seller a tax, whether properly or improperly imposed, that tax effectively becomes Commonwealth property, whether the seller transfers it to the Commonwealth or holds it in a trust fund for the Commonwealth. *See* 72 P.S. § 7225 (directing that all taxes not transferred to the Commonwealth must be held in a trust fund); 72 P.S. § 7252 (stating that the **Department** shall refund all taxes paid improperly to the Commonwealth). Accordingly, even if Neiman Marcus failed to forward the collected tax to the Commonwealth, it was required to hold, in a trust fund for the Commonwealth, any tax paid by a purchaser. *See* 72 P.S. § 7225. Alternatively, if Neiman Marcus did forward the collected tax to the Commonwealth, then Sections 7252 and 7253 unambiguously dictate that Appellants must seek a remedy with the Department. *See* 72 P.S. §§ 7252, 7253.

In either scenario, once the consumer pays the tax, that amount effectively becomes Commonwealth property. The Department is thus in the best position to determine whether Neiman Marcus appropriately taxed the instant consumers, as it customarily handles the overwhelming majority of, if not all, such claims. *See Maryland Cas. Co., supra.* In fact, Section 7253 mandates that the Department cannot authorize a refund of improperly collected taxes unless the taxpayer has filed a petition for refund with the Department. *See* 72 P.S. § 7253(a).

In light of the fact that the taxes paid by the instant consumers are currently in the Department's possession, whether in actuality or in trust, we consider the issue of whether the tax was properly assessed to be within the Department's jurisdiction and well-within its expertise. *Compare with Ostrov,* 586 A.2d at 415–16 (concluding that the Public Utility Commission does not have primary jurisdiction over the issue of whether the Financial Responsibility Act governs self-insurance plans because issues involving "the applicability of insurance statutes to self-insurance plans ... have long been resolved by the courts"). Further, we find it impractical to permit certain claims to fall within the primary jurisdiction of the Department, while others fall within the primary jurisdiction of the Courts of Common Pleas, on the mere basis of whether the tax collector, at the time of the complaint, has forwarded the tax to the Commonwealth or holds it in trust for eventual submission to the Commonwealth. In that sense, we agree with the trial court that our Supreme Court's holding in *Lilian v. Commonwealth,* 467 Pa. 15, 354 A.2d 250 (1976), is applicable. *See id.* at 18, 354 A.2d at 252 (holding that when taxpayers seek a sales tax refund from the Department, courts do not have jurisdiction over such claims). Even though the taxpayers in *Lilian* sought a refund of taxes already paid to the Department, we conclude that our Supreme Court's finding applies equally to taxes being held in trust for the Department. The *Lilian* Court's holding therefore compels our conclusion in the case *sub judice* that primary jurisdiction over the tax-refund claims belong with the Department.

Upon remand, the trial court is directed to reinstate the amended complaint. The court shall stay the action, then refer the tax-refund issues to the Department if Ap-

---

7. Although *Maryland Cas. Co.* involves the doctrine of exhaustion of administrative remedies, we find that this Court's reasoning is also relevant when determining which entity has primary jurisdiction.

pellants choose to file the appropriate petition with the Department.[8]

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

**8.** Although the Department submitted an advisory opinion on the matter, that opinion was not properly before the trial court's consideration at the preliminary-objection stage. *See Ellenbogen, supra.*