J-A26035-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RITE AID HEADQUARTERS CORPORATION | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BRINES REFRIGERATION HEATING & COOLING | : | No. 992 EDA 2021 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered December 24, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  200401092

BEFORE:  BOWES, J., STABILE, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED MARCH 8, 2022**

Brines Refrigeration Heating & Cooling (Appellant) appeals from the order entered in the Philadelphia County Court of Common Pleas, denying its motion to stay proceedings concerning Rite Aid Headquarters Corporation's (Rite Aid) complaint, or in the alternative, for a protective order to limit discovery.  On appeal, Appellant claims the underlying case involves a claim for fraudulent collection of sales tax and therefore, it must be stayed until the applicable taxing authorities address the issue as required by ***Stoloff v. Neiman Marcus Group, Inc.***, 24 A.3d 366 (Pa. Super. 2011).  Based on the following, we affirm.

The trial court set forth the relevant facts and procedural history, which were derived from the verified complaint, as follows:

[Rite Aid] is a pharmacy chain with stores located throughout the United States including Pennsylvania. [Appellant] is a commercial mechanical contractor that performs HVAC, lighting, refrigeration and other general services. From 2004 to 2019, [Rite Aid] contracted with [Appellant] to perform various maintenance and related services at its various locations in more than 20 states, including Pennsylvania. During this time period, various contracts were executed by the parties which set forth the contractual relationship and obligations between [Rite Aid] and [Appellant]. Specifically, the 2010 Master Service Agreement [("MSA")] and the 2016 [MSA], in particular, required that [Appellant]'s invoices identify "state sales tax" when applicable. Additionally, the 2013 HVAC Agreement also included a "Retail Facilities Invoice Procedure" which required that "All Invoices MUST list separately the overhead and profit rate and applicable sales or other tax, if any. Vendor shall be responsible for all collected taxes associated with paid invoices." Furthermore, the 2010 MSA, the 2016 MSA, the 2013 HVAC Agreement, Lighting Agreement and the 2018 HVAC Agreement also contain[ed] indemnification provisions and assurances that [Appellant] was in compliance with all current federal, state and local laws and regulations.

Since 2010, [Appellant] issued to [Rite Aid] more than 150,000 invoices which include a line item change for either "tax", "sales tax" and/or the name of the taxing juris[di]ction. At all times relevant hereto, [Rite Aid] paid [Appellant]'s invoices, including the line item charge for "tax", "sales tax" and/or that contained the name of the taxing authority.[1]

In January 2019, the PA Department of Revenue ("Department") sent [Rite Aid] the results of a sales tax audit of [its] subsidiary Thrift Drug, Inc. covering the audit period of May 1, 2015 to February 8, 2018. As a result of the audit, the Department assessed additional tax amounts in approximately 177 invoices that [Rite Aid] received from [Appellant] during the relevant audit period for which the Department determined that [Rite Aid] had not paid any PA sales or use tax for the taxable service identified in [Appellant]'s invoices.

_____

[1] Rite Aid purportedly paid Appellant "more than $5.1 million of 'tax.'" Complaint, 4/22/2020, at 2.

Also, in 2019, the Department began a separate sales audit of Rite Aid, Inc. [Rite Aid] retained Keystone Tax Associate's, a sales and use tax consulting firm, to help in reviewing the sales and use tax Rite Aid paid to the Commonwealth of [Pennsylvania] and related issues. In November 2019, representatives from Keystone and Rite Aid met with the Department state tax auditors to discuss the preliminary assessment of use tax on Rite Aid of PA for the invoices issued by [Appellant] that included a "tax" line item. **State auditors informed Rite Aid that the Department was unable to locate any record of [Appellant] being registered with or licensed by the Department to collect and remit PA sales tax. The State Auditors also informed [Rite Aid] that the Department did not have records of [Appellant] remitting any sales tax to the department.** The Department also informed [Rite Aid] that they did not recognize the "tax" listed on the invoices issued by [Appellant] and paid by [Rite Aid] because unless [Appellant] was remitting the tax to the department using a different name, the tax listed on the invoice had not been remitted and was not a PA sales tax.

On January 23, 2020, during a call between representatives of [Rite Aid] and [Appellant], [Appellant] provided [Rite Aid] with the following information: 1) [Appellant] had not paid sales tax for work performed in Pennsylvania to the Department or the tax authorities in other states and 2) the itemized "tax" listed on [Appellant]'s invoice was not actually a tax but some other charge by [Appellant]. [Appellant] did not explain what it claimed the line item stating "tax" represented.

The Department in connection with a closed audit, assessed [Rite Aid] use tax, interest and fines for the work performed by [Appellant]. In connection with an open audit, the Department has informed [Rite Aid] that it will be assessed additional use tax for work performed by [Appellant] even though [Rite Aid] paid the "tax" to [Appellant] for the work.

Trial Ct. Op., 7/28/21, at 1-4 (footnotes omitted; emphasis added).

In April 2020, Rite Aid instituted a lawsuit against Appellant, raising claims of breach of contract, fraud, unjust enrichment, and negligent misrepresentation based on its reliance that Appellant remitted the taxes

collected from Rite Aid to the proper state tax authorities. *See* Complaint, 4/22/2020, at 1-15. Rite Aid sought damages for the money Appellant purportedly stole under the guise of a charge of "tax" on the invoices. Rite Aid also requested a declaratory judgment, seeking an order and judgment stating it was "entitled to indemnification from [Appellant] for any actions by state tax authorities related to [Appellant]'s misconduct, including for any future tax liability, losses, damages, attorney's fees, interest and any other cost Rite Aid may incur." *Id.* at 16.

On September 9, 2020, Appellant filed a motion to stay proceedings based on *Stoloff*, *supra*, or, in the alternative, for a protective order to limit discovery.[2] Appellant alleged that Rite Aid requested these tax payments be returned but it could not do so based on the following assertion:

> [O]nce taxes are collected by a seller like [Appellant], the taxes become the property of the state. [Appellant] cannot simply be ordered to pay the taxes back because the taxes would not belong to [Appellant]. They belong to the state. [Rite Aid]'s recourse [was] to seek redress with the state.

Appellant's Motion to Stay Proceedings on Plaintiff's Complaint and, in the Alternative, to Limit Discovery, 9/9/20, at 5 (citation omitted). Rite Aid

---

[2] In addition to the motion to stay, Appellant filed one set of preliminary objections (POs) and two sets of amended POs. Rite Aid filed responses to the POs, its own POs to Appellant's POs, and POs to Appellant's answer, new matter, and counterclaim as well as its amended answer and new matter. Lastly, Rite Aid filed a motion for attorney fees.

responded to the motion. The trial court reviewed the matter and denied Appellant's motion to stay proceedings or limit discovery.[3]

In January 2021, Appellant filed an application for an amendment of the court's order denying its motion to stay on Rite Aid's complaint to include language specified by 42 Pa.C.S. § 702(b),[4] thereby certifying the order for interlocutory appeal. Appellant alleged there was "substantial ground for disagreement on the controlling issue of law which need[ed], from a practical perspective, to be resolved before trial[.]" Appellant's Application for an Amendment of the Court's Order Denying Appellant's Motion to Stay to Certify an Interlocutory Appeal, 1/19/2021, at ¶ 11. The trial court did not dispose of the motion within the required 30 days and therefore, the application was deemed denied pursuant to Pa.R.A.P. 1311.

---

[3] The court's order was dated December 23, 2020, but docketed the following day. The court entered the order without an opinion.

[4] Subsection 702(b) provides:

> (b) **Interlocutory appeals by permission.** — When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

42 Pa.C.S. § 702(b).

Appellant then filed a petition for permission to appeal with this Court pursuant to Rule 1311. In a *per curiam* order, this Court granted the petition on May 21, 2021. The matter is now before us.

Appellant presents the following issue for our review:

Whether a Common Pleas case involving a claim for fraudulent collection of sales tax must be stayed until the applicable taxing authorities address the issue as required by this Court's opinion in *Stoloff v. Neiman Marcus Group, Inc.*, 24 A.3d 366 (Pa. Super. 2011)?

Appellant's Brief at 2.

The crux of Appellant's argument is that the present proceedings must be stayed pursuant to the doctrine of primary jurisdiction and this Court's ruling in *Stoloff* "which requires the stay of any civil litigation of 'any dispute' regarding sales tax pending exhaustion of administrative remedies with the applicable taxing authority." Appellant's Brief at 4-5. Appellant avers:

This is, in part, because a seller collects sales tax as an agent for the taxing authority and holds the funds in trust for the taxing authority. This means a seller cannot simply return the funds to the purchaser. Once collected, sales taxes generally belong to the taxing authority and cannot be returned without proceedings involving the taxing authority.

Because Rite Aid alleges [Appellant] collected sales tax from it but failed to remit those taxes to the appropriate authorities, this Court should direct the trial court to stay all proceedings in the civil action until all required proceedings before the Pennsylvania Department of Revenue are concluded. As a matter of comity, the stay should also be applied until future proceedings before taxing authorities outside of the Commonwealth are concluded.

*Id.* at 5.

- 6 -

Appellant further contends that the court's decision was based on two erroneous grounds. Appellant's Brief at 6. First, Appellant alleges that the court erred in concluding that there was "no allegation in the complaint, or reasonable inference, that the 'tax' is a sales tax or that [Appellant] is holding the tax in trust." *Id.* (footnote omitted). In support of its assertion, Appellant points to paragraph 5 of Rite Aid's complaint, which states that "[Appellant] collected 'sales tax' from Rite Aid and f[a]iled to remit it to taxing authorities[,]" and paragraph 67 which states "'Rite Aid reasonably believed that the 'tax' listed in the invoice reflected sales tax.'" *Id.* (record citations omitted). Appellant asserts:

> The trust fund aspect of **Stoloff** is not one that arises from the pleadings, it arises from the statute.[6] Pennsylvania['s] sales tax statute provides that any tax collected under color of the law is held in trust for the Commonwealth.[7] The under color of law portion of the statute is particularly relevant because, as the trial court recognized, "[Rite Aid] is seeking a refund from [Appellant] for charging [Rite Aid] a 'tax' disguised as a sales tax. To the extent there is a dispute over whether the "tax" is sales tax or something "disguised" as a sales tax and collected under color of the law, the dispute must be resolved by the taxing authorities.

> _____

> [6] If **Stoloff** is only implicated when the complaint allege[s] the existence of a trust fund, a plaintiff could avoid **Stoloff** by simply omitting a trust fund allegation.

> [7] 72 P.S. § 7225 [("All taxes collected by any person from purchasers in accordance with this article and all taxes collected by any person from purchasers under color of this article, including all taxes paid by any person who advertises or holds out or states, directly or indirectly, that such person will pay the tax for the purchaser, which have not been properly refunded by such person to the purchaser shall constitute a trust fund for the Commonwealth, and such

trust shall be enforceable against such person, his representatives and any person (other than a purchaser to whom a refund has been made properly) receiving any part of such fund without consideration, or knowing that the taxpayer is committing a breach of trust: Provided, however, That any person receiving payment of a lawful obligation of the taxpayer from such fund shall be presumed to have received the same in good faith and without any knowledge of the breach of trust. Any person, other than a taxpayer, against whom the department makes any claim under this section shall have the same right to petition and appeal as is given taxpayers by any provisions of this part.")].

Appellant's Brief at 6-7 (some footnotes omitted).

Second, Appellant complains the court erred in determining that "the expertise of the taxing authorities is not required because Rite Aid is not seeking a refund, [or] seeking the interpretation of any taxing regulations or challenging any assessment." Appellant's Brief at 7 (footnote omitted). Appellant maintains this position was addressed by the *Stoloff* Court and rejected because "once the consumer pays the tax, that amount effectively becomes Commonwealth property[, and] it does not matter whether the complaint alleges the funds are held in trust or not" or "whether the 'tax' was sales tax or something else." Appellant's Brief at 7 (citation and internal quotation marks omitted). Appellant postulates that the "point of *Stoloff* is the plaintiff is required to first seek a refund from the taxing authorities." *Id.*

Based on this theory, Appellant asserts the doctrine of primary jurisdiction is invoked and requires a stay of the proceedings on Rite Aid's complaint as the Department has jurisdiction over matters involving

Pennsylvania sales tax. *See* Appellant's Brief at 8-12. Appellant also suggests that the issues in the case are "complex and require the specialized competence of the taxing authorities." *Id.* at 13. Likewise, Appellant states that the matter should be stayed until the conclusion of any required proceedings in sister state jurisdictions. *See id.* at 20-26. Lastly, Appellant contends that it may be subject to inconsistent rulings and duplicative liability if the proceedings are not stayed. *Id.* at 27-28.

We begin with our standard of review in matters involving jurisdiction: "[I]ssues concerning the jurisdiction of the trial court . . . present questions of law and are subject to [a] *de novo* [standard of] review." *Stoloff*, 24 A.3d at 369 (citation omitted).

> [T]he doctrine of primary jurisdiction is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. Primary jurisdiction applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the jurisdiction of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

*Ciamaichelo v. Independence Blue Cross*, 909 A.2d 1211, 1218 (Pa. 2006), *citing Elkin v. Bell Telephone Company of Pennsylvania*, 420 A.2d 371 (Pa. 1980).

> The doctrine serves several purposes, chief of which are the benefits to be derived by making use of the agency's special experience and expertise in complex areas with which judges and juries have little familiarity. Another important consideration is the statutory purpose in the creation of the agency — the powers

granted by the legislature and the powers withheld. And, another fundamental concern is the need to promote consistency and uniformity in certain areas of administrative policy. . . .

It is equally important to realize what the doctrine is not-it is not simply a polite gesture of deference to the agency seeking an advisory opinion wherein the court is free to ignore the agency's determination. Rather, once the court properly refers a matter or a specific issue to the agency, that agency's determination is binding upon the court and the parties (subject, of course, to appellate review through normal channels), and is not subject to collateral attack in the pending court proceeding.

\* \* \*

We must enter a caveat, however. Courts should not be too hasty in referring a matter to an agency, or to develop a "dependence" on the agencies whenever a controversy remotely involves some issue falling arguably within the domain of the agency's "expertise." "Expertise" is no talisman dissolving a court's jurisdiction. Accommodation of the judicial and administrative functions does not mean abdication of judicial responsibility. The figure of the so-called "expert" looms ominously over our society – too much so to permit the roles of the court and jury to be readily relinquished absent a true fostering of the purposes of the doctrine of primary jurisdiction.

Therefore, where the subject matter is within an agency's jurisdiction and where it is a complex matter requiring special competence, with which the judge or jury would not or could not be familiar, the proper procedure is for the court to refer the matter to the appropriate agency. Also weighing in the consideration should be the need for uniformity and consistency in agency policy and the legislative intent. Where, on the other hand, the matter is not one peculiarly within the agency's area of expertise, but is one which the courts or jury are equally well-suited to determine, the court must not abdicate its responsibility. In such cases, it would be wasteful to employ the bifurcated procedure of referral, as no appreciable benefits would be forthcoming.

**Elkin**, 420 A.2d at 376-77 (citations and footnotes omitted).

Lastly, "we look to the plaintiff's allegations, not to the form of the pleading or the cause(s) of action asserted, to determine whether the doctrine of primary jurisdiction applies." *Erie Ins. Exch. V. Pa. Ins. Dep't*, 133 A.3d 102, 108 (Pa. Commw. 2016).[5]

With these principles concerning the doctrine of primary jurisdiction in mind, we now turn to the case relied on by Appellant, *Stoloff*. There, the appellant-buyer filed a class action lawsuit against the appellee-department store, which arose from her purchase-by-phone of a dress from the store's catalog, to which the appellee-department store added a 6% sales tax. *Stoloff*, 24 A.3d at 368.

> In their complaint, [the a]ppellants insisted that [the appellee-department store] regularly required its Pennsylvania customers to pay a sales tax on clothing, even though most articles of clothing are not subject to the Pennsylvania tax. As a result, [the a]ppellants filed a class-action complaint against [the appellee-department store], alleging breach of contract, unjust enrichment, violation of the consumer protection law, and conversion, in addition to seeking injunctive relief.

*Id.* (footnote omitted).

The appellee-department store filed preliminary objections claiming the trial court lacked subject-matter jurisdiction. *See Stoloff*, 24 A.3d at 368. Following a hearing on the matter, at which the court was in receipt of an

---

[5] We note we are not bound by the decisions of the Commonwealth Court. *IRS v. Blue Mountain Ministry, Inc.*, 265 A.3d 824, 828 n.3 (Pa. Super. 2021). Nevertheless, this decision is persuasive authority and helpful in our review of the issue presented.

advisory opinion by the Pennsylvania Department of Revenue, the trial court determined the appellants did not exhaust their administrative remedies, thereby depriving it of subject matter jurisdiction. **See id.** The appellants filed an appeal, arguing that the court erroneously limited the scope of its jurisdiction based on the following: (1) the Pennsylvania Supreme Court provided broad jurisdiction to the trial courts; and (2) they were "not filing an action against a government entity, but rather a private entity [and therefore,] their claims were not subject to the statutes governing tax-refund claims from this Commonwealth". **See id.** at 368-69.

In reversing the trial court's decision, a panel of this Court held that any dispute involving the payment of sales tax must first be resolved by the Department and found the doctrine of primary jurisdiction applied,[6] opining:

> [The a]ppellants rely on Section 7225 for the proposition that "private parties have a duty to refund improperly collected taxes," and the apparent proposition that the Court of Common Pleas properly has primary jurisdiction in this case. [The a]ppellant's interpretation of Section 7225 is misplaced. Section 7225 unambiguously states anyone who collects taxes that have not been properly refunded to a purchaser must hold such amount in a trust fund for the Commonwealth. 72 P.S. § 7225. This language does not elevate a purchaser to the status of a private party who may bypass administrative remedies. Reading Sections 7225 and 7252 together, we determine that once a purchaser pays the seller a tax, whether properly or improperly imposed, that tax effectively becomes Commonwealth property, whether the seller transfers it to the Commonwealth or holds it in a trust fund for the Commonwealth. **See** 72 P.S. § 7225 (directing that

---

[6] In conjunction with determining the doctrine of primary jurisdiction applied, the panel concluded the trial court erred in dismissing the complaint for lack of subject matter jurisdiction. **Stoloff**, 24 A.3d at 368.

all taxes not transferred to the Commonwealth must be held in a trust fund); 72 P.S. § 7252 (stating that the **Department** shall refund all taxes paid improperly to the Commonwealth). Accordingly, even if [the appellee-department store] failed to forward the collected tax to the Commonwealth, it was required to hold, in a trust fund for the Commonwealth, any tax paid by a purchaser. *See* 72 P.S. § 7225. Alternatively, if [the appellee-department store] did forward the collected tax to the Commonwealth, then Sections 7252 and 7253 unambiguously dictate that Appellants must seek a remedy with the Department. *See* 72 P.S. §§ 7252, 7253.

In either scenario, once the consumer pays the tax, that amount effectively becomes Commonwealth property. The Department is thus in the best position to determine whether [the appellee-department store] appropriately taxed the instant consumers, as it customarily handles the overwhelming majority of, if not all, such claims. In fact, Section 7253 mandates that the Department cannot authorize a refund of improperly collected taxes unless the taxpayer has filed a petition for refund with the Department. *See* 72 P.S. § 7253(a).

In light of the fact that the taxes paid by the instant consumers are currently in the Department's possession, whether in actuality or in trust, we consider the issue of whether the tax was properly assessed to be within the Department's jurisdiction and well-within its expertise.

*Stoloff*, 24 A.3d at 372-73 (footnotes and some citations omitted)).

Turning to the present matter, the trial court first looked to the allegations made in Rite Aid's complaint, finding:

[I]t is clear the doctrine of primary jurisdiction does not apply. [Rite Aid] brings this action against [Appellant] for breach of contract and fraud arising from [Appellant]'s alleged improper collection of a "tax" and its alleged false representation that the "tax" collected would be remitted to the proper authorities. There is no allegation or reasonable inference that can be drawn from the complaint that [Appellant] is holding the "tax" in trust for the Department or that the "tax" was a sales tax. In fact, it is alleged that [Appellant] is not licensed or registered with the Department and therefore could not remit the required sales tax charges.

- 13 -

This action was instituted by [Rite Aid] to recoup the allegedly unauthorized line item charge that [Appellant] imposed upon [Rite Aid].[24] [Rite Aid] is not asking for the Department to assess sales or use tax on [it] or [Appellant]. The assessment has already been made by the Department since the "tax" charged on the invoice is not recognized as a sales tax by the Department. [Rite Aid] is not asking for a refund, asking an interpretation of any tax regulations nor challenging any tax assessment from the Department. [Rite Aid] is seeking recourse against [Appellant] for its allegedly improper actions independent of the Department's role and on matters which are properly within the expertise of this court. Since the expertise of the Department is not implicated, the doctrine of primary jurisdiction does not apply.

_____

[24] [Appellant] makes various statements regarding what the line item "tax" represents. [Appellant] stated that the "tax" listed on the invoice issued to Rite Aid "was not Pennsylvania sales tax paid by [Rite Aid] to [Appellant]" but rather was the reimbursement of the sales tax paid by [Appellant] to [its] own vendors and then passed onto [Rite Aid] as a cost of the goods sold to [Rite Aid].

Trial Ct. Op. at 6-7 (some footnotes and record citation omitted).

The trial court further found that **Stoloff** was distinguishable from the present matter, explaining:

[Rite Aid] is not seeking a tax refund from the Department of Revenue or from an entity holding the tax in trust for the Department. [Rite Aid] is seeking a refund from [Appellant] for charging [it] a "tax" disguised as a sales tax. The Department of Revenue's expertise is not required in this action and the doctrine of primary jurisdiction does not apply.

Trial Ct. Op. at 8.

Based on the circumstances before us, we agree with the trial court that the doctrine of primary jurisdiction is not applicable and **Stoloff** is distinguishable from the present matter for several reasons. First, Appellant

conflates that fact that this case touches upon the failure of a party to pay a tax with the notion that any litigation, or even any allegation, related to a tax issue must fall under the umbrella of the Department. Likewise, Appellant repeatedly misconstrues Rite Aid's cause of action as a mere refund for the paid "taxes." Rather, this matter concerns Rite Aid's reliance on Appellant's statements that the taxes, which it listed on its invoices and requested Rite Aid pay, was ostensibly being collected and forwarded to the Department for tax purposes. Rite Aid further alleged Appellant either fraudulently or negligently mispresented this information because the money paid was never deposited with the Department as a "tax."

This leads us to our second point. Appellant focuses on two paragraphs of an 89-paragraph complaint to support its argument that Rite Aid did allege in its complaint that (1) the "tax" at issue was a sales tax; and (2) that Appellant was holding the tax in trust. Rather, when looking at the complaint *in toto*, this was not the case. Rite Aid's complaint focused on a fraudulent scheme as directed by Appellants. It specifically alleged that Appellant issued numerous invoices to Rite Aid, which included a line item charge for "tax" in connection with Appellant's work, which Rite Aid paid directly to Appellant. Rite Aid's Complaint at 2. Rite Aid then averred Appellant failed to remit that money to the proper tax authorities in Pennsylvania. ***See id.*** It further alleged:

> 35. In 2019, in connection with a tax audit by the PA Department of Revenue, Rite Aid learned that [Appellant] had not remitted to

the PA Department of Revenue the taxes [Appellant] had collected from Rite Aid for work [Appellant] had performed in Pennsylvania. In fact, according to the PA Department of Revenue, [Appellant] was not registered with the PA Department of Revenue and did not have a Pennsylvania sales tax license, in violation of Pennsylvania law. Without a valid sales tax license, a vendor cannot remit the required sales tax charges, as required by Pennsylvania law.

36. Because [Appellant] failed to remit the sales tax it collected, the PA Department of Revenue has informed Rite Aid that it is assessing a use tax on Rite Aid for its transactions with [Appellant] during the audit period.

37. Upon learning that [Appellant] was not registered for sales tax with the PA Department of Revenue and had never remitted to the PA Department of Revenue the sales tax it had collected from Rite Aid in Pennsylvania, Rite Aid's representatives attempted to contact [Appellant] on or about November 25, 2019, December 3, 2019, December 9, 2019, December 13, 2019 and January 3, 2020.

38. After repeatedly failing to respond to Rite Aid's attempts to get information about the sales tax collected by [Appellant], [its] representatives agreed to have a call with Rite Aid's representatives on or about January 15, 2020.

39. On the January 15, 2020 call, when Rite Aid's representatives asked for information related to [Appellant's] collection and remittance of sales tax in Pennsylvania, [Appellant's] representatives — includ[ing] [Appellant's] president Marty Brin — refused to answer Rite Aid's questions, claiming that they were waiting to hear from their accountants and attorneys.

40. On or about January 23, 2020, Rite Aid's representatives had another call with representatives of [Appellant], including Marty Brin and an attorney representing [Appellant]. On that call, [Appellant's] representatives informed Rite Aid that [it] had not paid sales tax for work performed in Pennsylvania to the PA Department of Revenue or to the tax authorities in other states. Instead, [Appellant's] representatives falsely claimed — in direct contradiction with the unequivocal language in [Appellant's] own invoices and requirements in the Agreements between Rite Aid and [Appellant] — that the itemized "tax" listed on [its] invoices

was not actually a tax, but some other charge by [Appellant]. Unsurprisingly, [Appellant] could not explain what the "tax" charges were.

41. Based on [Appellant's] representations on January 23, 2020 that the itemized "tax" listed on [its] invoices was not actually a tax, [Appellant] has not remitted the tax it collected from Rite Aid to any state tax authorities and now falsely claims that the itemized "tax" on [its] invoices did not reflect a tax.

*Id.* at 7-9.

Based on these averments, it is evident that Rite Aid was not merely claiming the parties' conflict involved a tax refund issue and that Appellant had placed the paid taxes in a trust fund. It is clear Rite Aid was alleging Appellant purportedly committed fraud or some other tortious action because it had not remitted the taxes to Department that it collected from Rite Aid, and that it could not even do so because it was not registered with Department and did not have a Pennsylvania sales tax license. Furthermore, the complaint also indicated that Appellant had subsequently changed its position and was now alleging that the itemized "tax" listed on the invoices was not actually a tax, but rather, some other charge. Accordingly, Appellant's argument has no merit.

Moreover, Appellant's reliance as ***Stoloff*** is misplaced for several reasons. One, the appeal issue does not concern a request for a refund of taxes already paid to the Department. Two, the appellants in ***Stoloff*** never asserted that the appellee-department store did not keep the taxes at issue in a trust fund for tax purposes as is the case here. Three, the appellants did

not set forth causes of action for fraud and negligent misrepresentation like Rite Aid did in its complaint. Lastly, in its brief, Appellant does not allege the money collected is being kept in a trust fund for tax purposes in accordance with the Sections 7225 and 7252. Therefore, contrary to Appellant's argument **Stoloff** is not controlling in this appeal.

In sum, we conclude the trial court did not err in denying its motion to stay proceedings concerning Rite Aid's complaint, or in the alternative, for a protective order to limit discovery, as it had jurisdiction to review the matter.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/8/2022